IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ADRIAN RIVERA-CORDERO,

    Plaintiff,

v.                                                                                                                    No. 20-CV-1106 KWR/GBW

MANAGEMENT AND TRAINING
CORP., R. HERNANDEZ, RN,
R. PARRA, LVN, A. URLING, LVN,
G. SANDOVAL, LVN, A. RUSSELL,
LVN, JAMIE BAUTISTA, in his individual
capacity, PETE SOLTERO, in his individual
capacity, SERGIO CROSBY, in his
individual capacity, the UNITED STATES
OF AMERICA, SOUTHWESTERN EYE
CENTER, LTD., and
DR. ROBERT VILLALOBOS, M.D.,

    Defendants.

## FIRST AMENDED COMPLAINT UNDER THE FTCA, *BIVENS*, § 1983, NEW MEXICO MEDICAL MALPRACTICE ACT, COMMON-LAW TORTS AND TORTS UNDER STATE LAW

    Plaintiff Adrian Rivera-Cordero, through the undersigned counsel, brings this action for violations of his civil rights under the Eighth and Fourteenth Amendments, the Federal Tort Claims Act ("FTCA"), *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971) ("*Bivens*"), 42 U.S.C. § 1983, and for negligence and torts actionable under state law.

### JURISDICTION AND VENUE

    1.    This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1346, and 2675, as well as supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.      Venue is proper under 28 U.S.C. § 1391, as Defendants are residents of New Mexico, a substantial part of the events complained of occurred in the District of New Mexico, and the cause of action arose in New Mexico.

## PARTIES

3.      Plaintiff Adrian Rivera-Cordero is a citizen of Mexico who was arrested and detained in New Mexico, as further described herein.

4.      Defendant Management and Training Corporation ("MTC") is a private contractor systematically organized to manage prison facilities, which operates the Otero County Prison Facility in Chaparral, New Mexico. Defendant MTC employed, retained, trained, and exercised direct supervisory control over Defendant R. Hernandez, RN, Defendant R. Parra, LVN, Defendant A. Urling, LVN, Defendant G. Sandoval, LVN, and Defendant G. Sandoval, LVN ("Nurse Defendants") during all relevant periods.

5.      Defendants Jamie Bautista and Pete Soltero were at all relevant times agents employed by the United States Border Patrol, which is the mobile, uniformed law enforcement arm of U.S. Customs and Border Protection within the Department of Homeland Security. They are sued in their individual capacities. At all relevant times, Defendants Bautista and Soltero were acting under the color of law within the scope of their duties and employment as agents of the U.S. Border Patrol.

6.      Defendant Sergio Crosby was at all relevant times an agent employed at the U.S. Customs and Border Protection Santa Teresa Station in New Mexico. Defendant Crosby is sued in his individual capacity. At all relevant times, he was acting under the color of law within the scope of his duties and employment as an agent with the U.S. Customs and Border Protection.

7. Defendant R. Hernandez, RN, is or was a nurse employed by Defendant MTC and was Plaintiff's treating nurse.

8. Defendant R. Parra, LVN, is or was a nurse employed by Defendant MTC and was Plaintiff's treating nurse.

9. Defendant A. Urling, LVN, is or was a nurse employed by Defendant MTC and was Plaintiff's treating nurse.

10. Defendant G. Sandoval, LVN, is or was a nurse employed by Defendant MTC and was Plaintiff's treating nurse.

11. Defendant A. Russell, LVN, is or was a nurse employed by Defendant MTC and was Plaintiff's treating nurse.

12. At all times material hereto, Defendant Southwestern Eye Center, Ltd. was a health care provider who operated Southwestern Eye Center located in Las Cruces, New Mexico. Defendant Southwestern Eye Center is a foreign corporation registered in the State of New Mexico and is a healthcare provider licensed to operate hospitals and health clinics in New Mexico.

13. At all relevant times, Defendant Dr. Villalobos is or was a physician employed by Defendant Southwestern Eye Center and was Plaintiff's treating ophthalmologist.

14. The United States of America is the proper defendant for claims brought under the FTCA for harm caused by United States Border Patrol employees, United States Customs and Border Protection Santa Teresa Station employees, and United States Marshals.

## FACTUAL BASIS

15. On or about April 16, 2018, Defendants Jamie Bautista and Pete Soltero arrested Plaintiff at or near the border between the United States and Mexico, within the State of New Mexico.

16. Although Plaintiff did not resist, he was forced to the ground, handcuffed, and then pulled back up to his feet, during the course of which he suffered an injury to his right eye.

17. Plaintiff cried out in pain and informed the agents that they had poked his eye, but Defendants Bautista and Soltero did not obtain any medical treatment for Plaintiff and continued transporting him to Santa Teresa Station for detention.

18. Plaintiff was detained for two days at the Santa Teresa station. During that time, Plaintiff's eye was visibly injured. He repeatedly notified Customs and Border Patrol agents, including Defendant Sergio Crosby, that he was in pain and could not open his eye, pleading with them for medical attention.

19. The agents, including Defendant Crosby, ignored all Plaintiff's requests and told him to "chill out." They refused him any medical attention before he was transported.

20. Despite Plaintiff's visible injury to his right eye and his repeated requests for medical assistance, Defendant Crosby certified that Plaintiff "appears and claims to be in good health" and signed a document falsely alleging Plaintiff had refused medical treatment.

21. On or about April 18, 2018, Plaintiff was transferred to the Otero County Prison Facility in Chaparral, New Mexico, which is a private facility operated by Defendant MTC pursuant to a government contract.

22. Plaintiff's eye was visibly and severely injured when he arrived at the facility. During intake, an MTC employee provided him with two saline packages for his obvious injury, but he was not permitted to see a doctor, transported to a hospital, or provided any meaningful medical treatment.

23. The next day, Plaintiff's pain continued. He again requested medical treatment, submitting a written request stating that he had a "a very serious problem with one of my eyes." He marked the request "!!Urgent!!"

24. Despite this request, Defendant MTC and the Nurse Defendants denied Plaintiff basic medical care for his injury and pain.

25. Plaintiff went to sick call every morning and night for a week, begging the Nurse Defendants for immediate medical attention. Despite his repeated pleas, the Nurse Defendants continued to deny him medical care.

26. On or about April 25, 2018, Plaintiff again submitted a written request for medical treatment, saying that he was "starting to lose sight." He added: "Please Help. I need to see a doctor."

27. The Nurse Defendants still refused to have Plaintiff evaluated, treated, or transported for emergent medical care, despite his obvious and obviously worsening symptoms and requests.

28. Sometime afterward, Plaintiff approached the facility warden, who immediately noticed Plaintiff's visible injury. Plaintiff was then evaluated by a physician in the facility, who determined that Plaintiff required emergency treatment.

29. Plaintiff was transported to an emergency room, where physicians diagnosed him with a choroidal hemorrhage in his right eye. He was subsequently treated by a specialist on or about April 26, 2018, who prescribed medicated drops for his eye.

30. The delays in treatment caused a total and permanent loss of vision in Plaintiff's right eye and created a grave risk of damage to his left eye, as well.

31. The specialist Plaintiff saw on April 26, 2018 specifically warned him that he should obtain immediate treatment if he began to notice certain symptoms in his left eye, such as seeing "curtains."

32. Plaintiff returned to the Otero County Prison Facility, where he remained for approximately two months before he began noticing troubling symptoms in his left eye.

33. Defendant MTC, by its policy and practice, refused to transport Plaintiff for emergency care until a physician approved the transport. Because it had no physician onsite, Plaintiff was denied emergency medical care until the next day.

34. Physicians at the hospital again referred Plaintiff to a specialist, but employees of the U.S. Marshal Services refused to give immediate approval for the treatment. Plaintiff was forced to wait a week for bureaucratic approval of the referral. No other specialized care was provided to him in the interim.

35. When Plaintiff was finally able to see a specialist, he learned that his left retina had detached and he needed emergency surgery. He was transported to Dallas County on July 7, 2018, where he underwent surgery on his left eye and recuperated in the Dallas County Jail.

36. Because of the delays in obtaining treatment for his detached retina, Plaintiff's left eye was not able to recover full vision.

37. The detachment was repaired at Parkland Hospital in Dallas, Texas in July 2018. After the surgery, Plaintiff again began experiencing troubling symptoms in his left eye. On January 25, 2019, a medical doctor recommended an additional surgery on that eye, pending a retina evaluation. On or about September 26, 2018, Plaintiff was transferred back to Otero County Prison. Defendant MTC and the Nurse Defendants promptly interfered with the complete and regular administration of his prescription medication, so that for a period of time he could not

receive all of his eyedrops as prescribed. In approximately January 2019, Plaintiff began to experience further symptoms in in his left eye, including pain and vision loss. Defendant MTC and the Nurse Defendants did not transport him for specialized treatment until about February 26, 2019.

38. Plaintiff's left eye deteriorated further, and on February 26, 2019, he saw Defendant Dr Villalobos to treat its worsening condition, including blurring vision. At the time, Plaintiff was using prednisolone acetate 1% and Combigan. A nurse dilated his left pupil and noted it was "sluggish" and "irregular" and his vision was limited (particularly at the periphery). When Defendant Dr. Villalobos entered the room, he did not examine Mr. Rivera-Cordero or his eye. Although he had the Dallas medical doctor's records from January 2019, which noted uveitis in Plaintiff's left eye and the plan for surgery, he neither assessed for nor treated uveitis nor evaluated Plaintiff for surgery. Instead, he concluded that the left eye was largely "stable" and no treatment was required. The only change he made was to "restart" Mr. Rivera-Cordero on Atropine 1% (the medical records in Defendant Dr. Villalobos's possession indicated that Atropine 1% had been used to dilate Mr. Rivera-Cordero's left eye on April 27, 2018 but never at any subsequent visit, having been replaced by Tropicamide 1% and Phenylephrine 2.5%).

39. After the visit, Plaintiff informed the Nurse Defendants that Defendant Dr. Villalobos had not examined him or addressed his symptoms.

40. On April 12, 2019, Plaintiff attempted to make an urgent appointment with Defendant Dr. Villalobos for follow-up care. He was not able to meet with the doctor until April 17, 2019. During that visit, Plaintiff insisted that his eye required emergent care. He described yet worsening symptoms, including clouded vision. He objected to Defendant Dr. Villalobos's characterization of his eye as "stable," and informed Defendant Dr. Villalobos that the Atropine

1% had caused his eye significant pain and discomfort. An argument ensued as Defendant Dr. Villalobos shouted at Plaintiff, refused to examine or treat him, and had him escorted out of the office.

41.     Although Plaintiff's symptoms clearly continued to worsen and he was in (and complained of) severe pain, Defendant MTC and the Nurse Defendants did not attempt to transport him for further specialized care for almost two months, until April 17, 2019.

42.     Defendant MTC and the Nurse Defendants knew that the specialist did not examine or provide treatment to Plaintiff on April 17, 2019, as the specialist refused to treat Plaintiff and MTC employees returned him from the office to the prison facility. They nonetheless did not allow Plaintiff prompt access to other specialized or emergency treatment or transport him to a hospital. Following the aborted appointment on April 17, 2019, Plaintiff repeatedly informed the Nurse Defendants of his symptoms, complaining whenever sick call gave him the opportunity to do so. He was not provided any meaningful treatment until April 26, 2019.On April 26, 2019, Plaintiff saw providers at Eye Associates of New Mexico, who immediately identified that he required another emergency surgery on his eye. Between January 25, 2019 and April 26, 2019, Defendant Dr. Villalobos was the only provider who did not assess Plaintiff eye for an additional surgery, despite knowing Plaintiff's medical history. This failure proximately caused a two-month delay in Plaintiff's treatment, which led to permanent vision loss and other damages (such as prolonged pain and suffering, and the necessity of using medicated eye drops for the remainder of his life). Plaintiff returned to Dallas County for the second emergency surgery.

43.     Plaintiff learned that he would have permanent loss of all vision in his right eye, half the vision in his left eye, and all peripheral vision, as well as uveitis, and will require medical care and prescription eyedrops for the rest of his life.

8

44. In addition to his severe medical damages, Plaintiff now endures serious and ongoing pain and suffering, including emotional distress and fear of losing the little that remains of his vision.

45. Pursuant to the Federal Tort Claims Act, on October 29, 2019, Plaintiff submitted administrative claims to the U.S. Marshals, the Department of Homeland Security, Immigration and Customs Enforcement (ICE), the Health and Human Services Department, and Customs and Border Protection for damages relating to this incident.

46. On April 27, 2020, Customs and Border Protection finally denied the claims in writing. No other agency issued a final disposition within six months. *Cf.* 28 U.S.C. § 2675(a).

## COUNT 1
### VIOLATIONS OF THE EIGHTH AND/OR FOURTEENTH AMENDMENTS BY DEFENDANT MTC AND THE NURSE DEFENDANTS

47. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

48. The Eighth Amendment and the Fourteenth Amendment provide protections to convicted persons in state custody and to pretrial detainees, respectively, to safeguard them from cruel and unusual punishment—including deliberate indifference to serious medical needs or the wanton infliction of pain.

49. Plaintiff's medical needs and pain and suffering were sufficiently and objectively serious enough to warrant protection under the Eighth Amendment, the Fourteenth Amendment, or both.

50. By their acts and omissions, as described above, the Nurse Defendants were deliberately indifferent to Plaintiff's serious medical needs, and needlessly and wantonly inflicted severe pain and permanent injury upon him.

51. Systemic failures, including consistent and prolonged delays in providing adequate medical treatment and refusal to promptly address detainee complaints, amount to a policy or practice of Defendant MTC, which created obvious risks and predictably resulted in the constitutional violations and injuries described herein.

52. The acts and omissions described above, which were committed while Defendant MTC and the Nurse Defendants acted under the color of law, violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment and/or his substantive due process rights under the Fourteenth Amendment. These violations are thus actionable pursuant to 42 U.S.C. § 1983.

53. The Nurse Defendants' acts and omissions proximately caused Plaintiff's damages and injuries, including pain and suffering, psychological and emotional distress, medical expenses, and serious and permanent physical harm, and Defendant MTC's constitutionally deficient policies, customs, training, and programs as described herein were a moving force behind those damages and injuries.

WHEREFORE, Plaintiff prays for compensatory and punitive damages and reasonable attorneys' fees and costs against Defendants MTC and the Nurse Defendants.

## COUNT 2
## FTCA CLAIMS AGAINST DEFENDANT UNITED STATES OF AMERICA

54. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

55. Defendants Bautista and Soltero intentionally, recklessly, or negligently committed acts that constitute torts under state law, including acts amounting to assault and battery and a violation of Plaintiff's federal and state constitutional rights, while acting within the scope of their employment as officers with the Border Patrol.

56. While acting within the scope of their employment as officers with the Border Patrol, Defendants Bautista, Soltero, and Crobsy also intentionally, recklessly, or negligently committed acts that constitute torts under state law, including gross negligence and deliberate indifference. Individual members of the U.S. Marshals likewise intentionally, recklessly, or negligently committed such acts while acting within the scope of their employment when they delayed and denied care to Plaintiff when he was suffering a serious medical emergency.

57. Defendants Bautista, Soltero, and Crosby breached their duty to act as reasonably prudent law enforcement officers when Defendants Bautista and Soltero used excessive force against Plaintiff when he was not resisting, when Defendant Crosby falsified records, and when all three and individuals employed by the U.S. Marshals denied Plaintiff access to adequate medical care in violation of his federal and state constitutional rights.

58. The tortious acts and omissions of Defendants Bautista, Soltera, Crosby, and individual U.S. Marshals employees as described above actually and proximately caused Plaintiff harm and damages, including pain and suffering, psychological and emotional distress, medical expenses, and serious and permanent physical injury.

WHEREFORE, Plaintiff prays for compensatory damages against Defendant United States of America.

### COUNT 3
### *BIVENS* CLAIMS AGAINST DEFENDANTS JAMIE BAUTISTA, PETE SOLTERO, AND SERGIO CROSBY

59. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

60. In their acts and omissions as described above, and while acting under the color of law and in the scope of their employment with as Border Patrol agents, Defendants Bautista and Soltero violated Plaintiff's right to be free from excessive force, and Defendants Bautista, Soltero,

and Crosby all violated his right to be free from cruel and unusual punishment and to substantive due process.

61. Both Plaintiff's right not to have excessive force used against him while he was not resisting and his right to access timely, adequate medical care while in government custody are clearly established rights of which any reasonable officer would have known. Once sustained, Plaintiff's injuries were readily visible and created an obvious risk of grave harm.

62. All three Border Patrol Defendants caused Plaintiff to suffer damages, including pain and suffering, emotional distress, medical expenses, and serious and permanent physical harm: Defendants Bautista and Soltero by using excessive force; Defendant Crosby by intentionally, recklessly, or negligently falsifying records to block Plaintiff's access to medical treatment; and all three by their deliberate indifference to Plaintiff's obvious and serious medical needs.

WHEREFORE, Plaintiff prays for compensatory and punitive damages, reasonable attorneys' fees, and costs against Defendants Bautista, Soltero, and Crosby.

**COUNT 4**
**STATE LAW CLAIM FOR PROFESSIONAL NEGLIGENCE AGAINST DEFENDANT MTC, THE NURSE DEFENDANTS, DEFENDANT SOUTHWESTERN EYE CENTER AND DEFENDANT ROBERT VILLALOBOS, M.D.**

63. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

64. The New Mexico Tort Claims Act waives sovereign immunity for negligence of public employees licensed by the State or permitted by law to provide healthcare services while acting within the scope of their duties, including when providing such services in a correctional facility pursuant to a contract.

65. Defendant MTC and the Nurse Defendants had a duty under New Mexico law to apply the standards of knowledge, skill, and care used in their respective professional disciplines while addressing Plaintiff's serious medical needs.

66. Defendant MTC and the Nurse Defendants breached these duties by repeatedly failing to provide Plaintiff with timely and appropriate medical care.

67. The acts and omissions of Defendant MTC and the Nurse Defendants were in willful, wanton, gross, and reckless disregard of their duty to meet the standards of knowledge, skill, and care for their respective professional disciplines.

68. The professional negligence of Defendant MTC and the Nurse Defendants as described above proximately caused Plaintiff's damages and injuries, including pain and suffering, psychological and emotional distress, medical expenses, and serious and permanent physical harm.

69. Plaintiff is entitled to relief against Defendants for damages resulting from pain and suffering, psychological and emotional distress, health care expenses, and serious, permanent physical injuries.

WHEREFORE, Plaintiff prays for compensatory and punitive damages and costs.

### COUNT 5
### STATE LAW CLAIM FOR NEGLIGENT OPERATION OF PUBLIC MEDICAL FACILITIES BY DEFENDANT MTC AND THE NURSE DEFENDANTS

70. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

71. The New Mexico Tort Claims Act waives sovereign immunity for common-law negligence claims arising from public employees' operation of an infirmary, clinic, and similar healthcare facilities, buildings, equipment, or furnishings. It also waives immunity for the violations of law-enforcement officers, including corrections officers in facilities that hold pretrial detainees.

72. Defendant MTC and the Nurse Defendants had a common-law duty to exercise reasonable care in the operation of the Prison Facility and its medical facilities, equipment, and furnishings, so as not to cause violations of detainees' rights.

73. By their acts and omissions as described above, Defendant MTC and the Nurse Defendants breached their duty to Plaintiff by failing to exercise such reasonable care in their operation of the medical facility, building, equipment, and furnishings or in their training and supervising of MTC employees with respect to such proper operation, in such a way that it caused the commission of violations.

74. The conduct exhibited by Defendant MTC and the Nurse Defendants was in willful, wanton, gross, and reckless disregard for their duty to Plaintiff and the other detainees in their care.

75. The negligence of Defendant MTC and the Nurse Defendants as set forth above proximately caused Plaintiff's damages and injuries, including pain and suffering, psychological and emotional distress, medical expenses, and serious and permanent physical injuries.

WHEREFORE, Plaintiff prays for compensatory and punitive damages and costs.

### COUNT 6 NEW MEXICO MEDICAL MALPRACTICE ACT, NMSA 1978, § 41-5-1, et seq.

76. Defendant Southwestern Eye Center and Defendant Dr. Villalobos had a duty to the plaintiff to comply with a reasonable medical standard of care in their treatment of Plaintiff.

77. The medical standard of care under the circumstances here would have required Defendant Dr. Villalobos and Defendant Southwestern Eye Center to:

   a. ensure Plaintiff was provided the appropriate and required medical diagnosis for his eye to detect any potential harm in his vision system; and
   b. ensure Plaintiff was provided the appropriate and required medical treatment to remedy or treat his vision or the worsening of his vision.

78. Defendant Southwestern Eye Center and Defendant Dr. Villalobos breached the duty they had to the decedent and the plaintiff and deviated from the standard of care by failing to ensure Plaintiff was given medical treatment to evaluate the condition of his eye and the status of his vision, which would have resulted in the detection of the condition that ultimately led to the permanent loss of vision in his left eye.

79. Defendant Southwestern Eye Center and Defendant Dr. Villalobos breached the duty they had to Plaintiff and deviated from the standard of care by failing to ensure Plaintiff was provided the appropriate and required medical intervention or medication to remedy irregularities in his cardiovascular system or the progression of his cardiovascular disease, which would have addressed the condition that ultimately led to permanent loss of vision. This breach of their duty of care caused the wrongful death of Plaintiff for which Defendant Southwestern Eye Center and Defendant Dr. Villalobos are liable for damages to Plaintiff.

80. At all times relevant to the allegations made in this Complaint, Defendant Dr. Villalobos was an agent and employee of Defendant Southwestern Eye Center and was acting within the scope of his employment.

81. Defendant Southwestern Eye Center is therefore liable to Plaintiff for the negligence of Defendant Dr. Villalobos under the doctrine of *respondeat superior*.

82. As a direct and proximate result of the negligence of the Defendants, Plaintiff has suffered damages.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

HARRISON & HART, LLC

By: _____
Carter B. Harrison, IV
Ramón A. Soto
924 Park Avenue SW, Suite E
Albuquerque, NM 87102
Tel: (505) 369-6599
Fax: (505) 341-9340
carter@harrisonhartlaw.com
ramon@harrisonhartlaw.com

*Attorneys for the Plaintiff*

**This Filing Has No Exhibits**